## Diefenderfer and Wife *versus* Eshleman.

113 305
192 465

1. Dower at common law and also under the intestate laws of this commonwealth is an estate in the land and not a mere lien upon it.

2. The interest or estate of the widow in the real estate of which her husband died seised is not divested by a sale in proceedings in partition in the order for which the Orphans' Court did not direct that her share should remain a charge on the land, for the court has no power to decree otherwise unless the consent of the widow be procured in such manner as to pass her estate in the land. The acceptance of service by the widow on a rule to show cause why the real estate should not be sold does not give such consent.

3. In an action in assumpsit by a widow to recover interest due her on her dower on the land of her late husband, the assignee is in no better position than the original purchaser. He is bound to take notice of the decree of partition which is in the line of her title.

February 17th, 1886. Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. GORDON, J. absent.

ERROR to the Court of Common Pleas of *Lehigh county.*

Assumpsit by James Diefenderfer and Sarah Diefenderfer his wife, in right of said wife against Jacob Eshleman to recover arrears of interest due on her dower on the land of her late husband. Pleas, non assumpsit, payment with leave.

The following are the facts as they appeared on the trial before MEYERS, P. J.

Jacob J. Snyder died on October 3d, 1873, intestate, leaving to survive him his widow, (now married to James Diefenderfer,) and five minor children, seised of two tracts of land situate in Lynn township, Lehigh county, the one containing about 76 acres and the other about 3 acres.

On October 27th, 1873, Henry J. Snyder, the guardian of three of these minor children, presented his petition in the Orphans' Court instituting proceedings in partition to divide this real estate. An inquest was awarded which resulted in the sale of the real estate under these proceedings in partition, after refusal of all the heirs to accept. The order of sale which made no provision as to the widow's interest in the land was issued to Jacob Zimmerman, who had been appointed administrator of the estate. He made return to the Court, that he sold tract No. 1, (the 76 acres,) to Daniel F. Snyder for $2,750, and tract No. 2, to the same person for $150, which sale was confirmed by the Court on April 24th, 1874.

Daniel F. Snyder, the purchaser, before receiving his deed

3 AMERMAN—20

[Diefenderfer and Wife *v.* Eshleman.]

from the administrator, entered into written articles of agreement, with Jacob Eshleman, the defendant, dated March 22d, 1875, for the sale of these two tracts of land. The consideration to be paid as stated in those articles of agreement read as follows: "The sum of sixteen hundred and fifty dollars on the delivery of these presents, and the balance, (less the dower which will remain on the said premises to the widow of J. J. Snyder, deceased, but the interests to said widow during her life), on the first of April next, subject, also, to the dower of Jacob Snyder on said premises."

Jacob Zimmerman, the administrator, conveyed these two tracts of land to Daniel F. Snyder by deed dated November 20th, 1875, and Daniel F. Snyder conveyed the same land, in pursuance of the agreement, to Jacob Eshleman by deed dated December 17th, 1875. No mention of the widow's dower was made in either of these deeds. Jacob Eshleman afterwards reconveyed to Daniel F. Snyder 7 acres and 36 perches of this same land by deed, and the balance he kept and held at the time this action was brought.

Jacob Zimmerman, the administrator, charged himself in his account with the proceeds of this real estate, and used some of it, in connection with the proceeds of the personal estate, for the payment of debts and expenses, so that the whole balance for distribution, as found by the Auditor on the administrator's account, was $1169.37.

The widow never appeared before the Auditor, and never released this dower or authorized any one else to release it from the land. The administrator and Daniel F. Snyder, with their counsel, appeared before the Auditor; and the Auditor reports as a fact that "it was also agreed that the balance in hand, or assets arising from the sale of the real estate is to be considered as real estate for the purposes of distribution, and that the widow is entitled to one third of the net balance, the interest whereof is to be paid to her during the period of her natural life annually, and that the said one third so distributed shall be invested on real estate security during said term." And he reported a distribution, *inter alia*, to "Sarah Ann Snyder (widow), $389.79." His report was filed and confirmed by Court, December 28th, 1875.

This money was never invested for the widow, and all she ever received on her interest was, on December 8th, 1876, goods out of the administrator's store for $33.78, and from his son in cash, in 1877, $23.38.

Under instructions by the Court the jury found a verdict for the defendant upon which judgment was entered. The plaintiffs thereupon took this writ assigning for error the direction of the Court to the jury to find a verdict for the defendant.

*James S. Biery*, for plaintiffs in error.—1. The Court below took the position that the Court granting the order of sale failing to direct in the decree of sale that the widow's dower should remain on the land, therefore it was discharged, and the purchaser took a free title, and, consequently the defendant also has a free title and need not pay the widow's interest.

What is the nature of a widow's statutory dower under our statutes? This Court has said, "What her estate really is, is expressed in the Intestate Act of 8th April, 1833, § 1: 'One third part of the real estate for the term of her life,' and the form in which the law assigns it leaves its character unchanged:" Schall's Appeal, 4 Wright, 177.

Like dower at common law, it is a defined interest in her husband's lands, arising at his death, and is a freehold estate: Bachman *v.* Chrisman, 11 Harris, 163.

An interest arising out of the land, in all respects of the nature of a rent-charge, and subject to sale on execution: Shaupe *v.* Shaupe, 12 S. & R., 12; Thomas *v.* Simpson, 3 Barr, 70.

It is an indefeasible charge for the widow and the heirs, and legal representatives after her death: Vandever *v.* Baker, 1 Harris, 126; Mentzer *v.* Menor, 8 Watts, 296.

That the widow's interest is real estate, is well settled by repeated decisions: Kurtz's Appeal, 2 Casey, 466.

That it is real estate is clear, from considering, that the Intestate Act gives her, where there are children, one third of her deceased husband's lands during her life: Miller *v.* Leidig, 3 W. & S., 458.

To call it a lien by way of expressing another additional security for the widow's rights, is not to deny its true character as an estate: Justice READ in Ziegler's Appeal, 11 Casey, 189.

2. The Court below held also, that by her laches this widow had lost the estate of her dower in this land. What laches she could be guilty of that would work this forfeiture, we are at a loss to conjecture. She is not required by our Acts of Assembly, or by the decisions of the Courts, to do any thing in order to secure her statutory dower. The statute creates her estate and preserves it for her and the heirs until she dies, or until by some act of hers she relinquishes her rights: Medlar *v.* Aulenbach, 2 P. & W., 359; Hise *v.* Geiger, 7 W. & S., 273; Fisher *v.* Keen, 1 Watts, 261; Kline *v.* Bowman, 7 Harris, 25.

3. It was also contended by counsel for defendant in the Court below, that the defendant, not being the purchaser from the administrator directly, could not be held for this interest, for want of privity of contract.

[Diefenderfer and Wife *v.* Eshleman.]

In DeHaven et al. *v.* Bartholomew, 7 P. F. S., 126, it was held that "An action of assumpsit may be maintained against a person taking land charged with the payment of money, as a means of enforcing payment out of the land. This arises out of privity of estate in the assignee, whose land is thus charged, as a means of subjecting it to execution by a judgment, *de terris.*" See also, Hise *v.* Geiger, *supra;* Alleman's Appeal, 42 Leg. Int., 70.

*Evan Holben,* for defendant in error.—The Act of April 8th, 1833, provides, that where such intestate shall leave a widow and issue, the widow shall be entitled to one third part of the real estate for the term of her life, and to one third part of the personal estate absolutely.

This Act does not provide as to how the money shall be secured. The plaintiffs' counsel lays much stress on the fact that her interest is an estate in the land, and cannot be divested by proceedings in partition. Is this true? It is an annuity in the nature of a rent charge: Power *v.* Power, 7 W., 212.

It has been held in Thomas *v.* Simpson, 3 Barr, 70, that "the estate in the land may be divested in the manner prescribed in the Act, as where upon petition of the widow or one or more of the children."

By Act of March 29th, 1832, it is provided, *inter alia*, that "on the return of such rule, the Court may on due proof of notice to all persons interested make a decree authorizing and requiring the executor or administrator, as the case may be, to expose such real estate to public sale at such time and place, and on such terms as the Court may decree."

Under this Act the Court decreed that the terms should be cash. The authority of the Court to do this cannot be controverted. These terms of sale ought to have been objected to by the widow if they were not satisfactory to her. If the decree was not strictly in accordance with the spirit of the Act, she ought not to have slept on her rights. A widow may waive her right to dower by her silence.

The Court below put its decision on the ground, that inasmuch as the plaintiff was negligent, and that because she was most to blame of the two parties, and applied the doctrine that "where two innocent persons must suffer he must bear the loss whose act or neglect has been the occasion of suffering:" Pa. R. R. Co.'s Appeal, 5 Norris, 80.

Mr. Chief Justice MERCUR delivered the opinion of the Court, October 4th, 1886.

A tenant in dower at common law has an estate and not a

[Diefenderfer and Wife v. Eshleman.]

mere lien: Ziegler's Appeal, 35 Pa. St., 173. So under our intestate laws a widow's statutory dower is an interest in the land, not merely a lien: Miller v. Liedig, 3 W. & S., 458; Bachman v. Chrisman, 23 Pa. St., 162; Schall's Appeal, 40 Id., 170; Gourley v. Kinley, 66 Id., 270.

Section 41 of the Act of 29th March, 1832, declares if the widow of the decedent be living at the time of the partition of his real estate, she shall not be entitled to payment of the sum at which her purpart or share of the estate shall be valued; but the same, together with interest thereof. shall be and remain charged on the premises, and the legal interest thereof shall be annually and regularly paid by the persons to whom such real estate shall be adjudged, their heirs and assigns.

The remedies of the widow for the collection of her dower are cumulative: Medlor v. Aulenbach, 2 P. & W., 359. She may collect by distraining or proceed on the recognizance, or other obligation given by the person to whom it was allotted, or bring assumpsit against his assignee: Pidcock v. Bye, 3 Rawle, 183; De Haven et al. v. Bartholomew, 57 Pa. St., 126.

Each of the several Acts of 1794, 1807, 1828 and 1832 relate to the assignment of the widow's share in partition. No one of them however changes the estate given to her by the intestate laws in lieu of dower; but only prescribes the form of assigning it: Schall's Appeal, supra.

The legislative command that the money for her share in the land shall remain charged thereon, withholds from the Orphans' Court in awarding partition, all power to decree otherwise, unless her consent be procured in such manner as to pass her estate in the land: Fisher v. Keen, 1 Watts, 178. No such consent was given in this case.

The assignee is in no better position than the original purchaser. The Act of 1832 cited, expressly extends the same liability to him. He was bound to take notice of the decree of partition, which is in the line of his title. Here, however, the defendant had actual notice of the widow's estate in the land, and of her claim to the annual interest thereon.

Under proceedings in partition by the heirs of J. J. Snyder, the intestate, the real estate was sold to one Daniel F. Snyder, and confirmed by the Court. Before a deed therefor was delivered to him, he entered into a written agreement under seal with the defendant for a sale of the land to the latter, in consideration of $3,875—agreed to be paid therefor, to wit, $1,652—on the delivery of "these presents," and the balance on the first day of April then next, "less the dower, which will remain on the said premises, to the widow of J. J. Snyder, deceased; but the interest to said widow during her life," "subject also to the dower of Jacob Snyder on said premises."

[Bush *v.* Breinig.]

When Daniel afterwards executed a deed to the defendant it does not appear that a reference was therein made to the dower of the plaintiff. Whether that may affect the vendor on the covenants in his deed is a question not now before us. Certain it is, that does not relieve the defendant from the express notice he had received of the estate and claim of the defendant.

We discover nothing in the evidence to estop the plaintiff from maintaining this action. The fact that she had notice of the rule to show cause why the property should not be sold, works no estoppel against her. The result of that sale would determine the annual sum which she would be entitled to receive; but it could not affect the character of her estate, nor deprive her of all appropriate remedies for the enforcement of her rights.

The omission in the deed from the administrator to Daniel F. Snyder, to refer to the plaintiff's right of dower, and the fact that Daniel paid the whole purchase money to the administrator, and the additional one that when the defendant accepted the deed he understood from his vendor, or the scrivener who drew it, that the land was clear from incumbrance, are all irrelevant, and the evidence thereof was improperly admitted. The plaintiff was not a party to nor present at any of those transactions. The acts and declarations of other persons could not impair her estate in the land, nor destroy her remedies for the collection of the sum given her by law.

The learned judge therefore erred in taking the case from the jury, and in instructing them to find for the defendant.

Judgment reversed and a <em>venire facias de novo</em> awarded.